IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| SAMANTHA SCHNEIDER, : | |
| : | CIVIL ACTION |
| Plaintiff, : | |
| : | |
| v. : | |
| : | NO.  13-5970 |
| THE IT FACTOR PRODUCTIONS, : | |
| a/k/a HOSTED CONTACT SOLUTIONS, : | |
| a/k/a KABACK MODEL MANAGEMENT, : | |
| and ALYCIA KABACK, : | |
| : | |
| Defendants. : | |

MEMORANDUM

BUCKWALTER, S. J.                                                                             December 9, 2013

Currently pending before the Court is Defendant Alycia Kaback's Motion to Dismiss the Complaint against her.  For the following reasons, the Motion is denied.

I.     FACTUAL BACKGROUND

According to the facts set forth in the Complaint, Plaintiff Samantha Schneider commenced employment with Defendant IT Factor Productions ("IT Factor") on September 4, 2012. (Compl. ¶ 6.)  During her first four weeks of employment, Plaintiff was classified as being in "training," essentially receiving no compensation, despite working twenty-three of twenty-five days during the period from September 4, 2012 to September 28, 2012.  (Id. ¶ 7.)  Defendant IT Factor did not pay Plaintiff the legally-prescribed minimum hourly wage.  (Id. ¶ 8.)

As of September 29, 2012, Plaintiff was placed on IT Factor's payroll.  (Id. ¶ 9.)  At the time of her hiring, she was not advised that she would be expected to work more than forty hours per week.  (Id. ¶ 10.)  From September 29, 2012 to the last date of her employment on January

18, 2013, however, there were numerous weeks in which Plaintiff was forced to work more than forty hours per week without receiving overtime pay at the rate of one and a half times her regular rate for each hour over forty which she worked per week. (Id. ¶ 11.) In addition, she was required to travel to an office location one hour away from her home, sit in a small interior windowless office with three other employees, and work long hours, six days per week. (Id. ¶ 12.) Anytime she left her desk, even to use the bathroom or get food, she was admonished by IT Factor's management, including President and Chief Executive Officer Alycia Kaback and Plaintiff's immediate supervisor Michael Fomkin. (Id. ¶ 13.)

Plaintiff was advised that she had to contact and sign up an unachievable number of people as "talent," which caused her to work long hours. (Id. ¶ 16.) Although she was given various job titles, she never had any management responsibilities. (Id. ¶ 17.) Plaintiff did everything that she was asked to do, even working times when Defendant IT Factor refused to compensate her because she was not allowed to "clock in" to be paid until later. (Id. ¶ 18.)

On numerous occasions, Plaintiff complained about the working conditions to management and questioned the lack of overtime pay and the manner in which she was being compensated. (Id. ¶ 14.) Each time, Plaintiff was advised that she would be "promoted" soon and that she was being paid in accordance with the law. (Id. ¶ 15.) In addition, every time she attempted to address pay issues, she was forced to deal with even more onerous work conditions. (Id. ¶ 19.) Over time, the intolerable work conditions started to affect Plaintiff's health. (Id.) When Plaintiff addressed this situation with Michael Fomkin, he told her that if she did not like it, then leave. (Id. ¶ 20.) As of January 2013—a point at which Plaintiff was one of IT Factor's longest tenured employees—the work conditions and hours had become increasingly intolerable

and she again addressed the situation with Fomkin, who again advised her to leave if she did not like it.  (Id. ¶ 21–22.)  As Plaintiff needed to make a living, however, she continued to endure the work conditions.  (Id. ¶ 23.)

On January 18, 2013, Plaintiff's last day of employment with IT Factor, Defendant Kaback came into the area where Plaintiff was working and screamed, "Get off the phone now." (Id. ¶ 24.)  Kaback then brought Plaintiff to her office where Fomkin screamed at the top of his lungs, saying that he bugged Plaintiff's phone, that she did not sound positive, and that she was bringing the company down with how negative she was.  (Id. ¶ 25.)  Fomkin then said he "wasn't firing" Plaintiff, but she had to take four days off and, if she wanted her job back, she had to email him 2,000 words explaining why he should let her keep her job.  (Id. ¶ 27.)  Plaintiff avers that IT Factor had no intention of ever letting her work there in the future and the plan was to claim that she resigned.  (Id. ¶ 28.)  Plaintiff also believes that Defendants' actions were in direct retaliation for her complaints about IT Factor's policies, which constitute federal and state law wage payment violations.  (Id. ¶ 29.)

On October 11, 2013, Plaintiff initiated the current action against Defendants IT Factor and Alycia Kaback.  Her Complaint sets forth four causes of action as follows: (1) violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, et seq., for failing to pay Plaintiff overtime for her hours in excess of forty hours per week (Compl. ¶¶ 30–39); (2) violation of the FLSA for constructively terminating her employment in retaliation for her complaints about the alleged violations of the FLSA, (id. ¶¶ 40–44) ; (3) violation of the Pennsylvania Minimum Wage Act ("PMWA"), 42 Pa.C.S. § 333.101, et seq., for failing to pay Plaintiff overtime for her hours in excess of forty hours per week (Compl. ¶¶ 45–54); and (4) violation of the Pennsylvania

Wage Payment and Collection Law ("WPCL"), 43 Pa.C.S. § 260.1, for failing to pay Plaintiff's wages earned within the time limits prescribed by the WPCL. (Compl. ¶¶ 55–60.)

Defendant Alycia Kaback moved to dismiss the Complaint against her on November 22, 2013. Plaintiff filed her opposition in response on November 26, 2013, making the present Motion ripe for judicial consideration.

## II.   STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P.12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint

states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

### III. DISCUSSION

Defendant Alycia Kaback presently moves to dismiss the Complaint as against her individually. In support of that Motion, she argues that, at all relevant times, she was a Member/Manager of Hosted Contact Solutions, also known as the IT Factor Productions, which is a limited liability company incorporated in the State of New Jersey. Further, at all relevant

times, Hosted Contact Solutions was duly registered with the City of Philadelphia Department of Licenses and Inspections as a limited liability company. Under both New Jersey and Pennsylvania law, members or managers of limited liability companies do not have any personal liability for the debt, obligation, or liability of those companies. (Pl.'s Mot. Dismiss 2 (citing N.J.S.A. 42:2B-23[1] and 15 Pa.C.S. § 8922(a)[2].) Accordingly, Defendant Kaback argues that the claims against her individually under the FLSA and the PMWA, as well as the claim against her under WPCL, are precluded by law.

A.   **FLSA and PMWA Claims**

The FLSA prohibits an "employer" from failing to pay overtime compensation. 29 U.S.C. § 207(a)(1). The Act defines an "employer" as including "any person acting directly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). The United

---

[1] This provision states:

> Except as otherwise provided by this act, the debts, obligations and liabilities of a limited liability company, whether arising in contract, tort or otherwise, shall be solely the debts, obligations and liabilities of the limited liability company; and no member, manager, employee or agent of a limited liability company shall be obligated personally for any such debt, obligation or liability of the limited liability company, or for any debt, obligation or liability of any other member, manager, employee or agent of the limited liability company, by reason of being a member, or acting as a manager, employee or agent of the limited liability company.

N.J. Stat. Ann. 42:2B-23

[2] This section states:

> Except as provided in subsection (e), the members of a limited liability company shall not be liable, solely by reason of being a member, under an order of a court or in any other manner for a debt, obligation or liability of the company of any kind or for the acts of any member, manager, agent or employee of the company.

15 Pa. Cons. Stat. § 8922(a).

States Court of Appeals for the Third Circuit has recognized a broad approach to the definition of an "employer" under the FLSA and has identified a number of decisions in which the United States Supreme Court used expansive language to describe the term "employer." In re Enterprise Rent-A-Car Wage & Hour Empl. Practices Litig., 683 F.3d 462, 467–68 (3d Cir. 2012) (citing Supreme Court cases).  In Haybarger v. Lawrence Cnty. Adult Prob. and Parole, 667 F.3d 408 (3d Cir. 2012), the Third Circuit expressly remarked that individuals acting in a supervisory capacity may be liable in their individual capacities as an employer under the FLSA.  Id. at 417 (discussing an individual supervisor's liability as an employer under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq., and noting that the definition of "employer" in that act is "materially identical to that in FLSA. . . .").  Consistent with these rulings, the FLSA has repeatedly been interpreted in the district courts of this Circuit as providing that "'a corporate officer with operational control is an "employer," along with the corporation, jointly and severally liable under the Act for unpaid wages.'"  Jackson v. Art of Life, Inc., 836 F. Supp. 2d 226, 235 (E.D. Pa. 2011) (citing Dole v. Haulaway, Inc., 723 F. Supp. 274, 286–87 (D.N.J. 1989), aff'd 914 F.2d 242 (3d Cir. 1990), cert. denied, 497 U.S. 1024 (1990); Dole v. Solid Waste Servs., Inc., 733 F. Supp. 895, 922 (E.D. Pa. 1989), aff'd 897 F.2d 521 (3d Cir.), cert. denied, 497 U.S. 1024 (1990); Su v. Li, No. Civ.A.10–5268, 2011 WL 3329882 at *4 (D.N.J. Aug. 1, 2011)).

      To determine whether a defendant is a plaintiff's "employer" within the meaning of that term under the FLSA, the Third Circuit, in In re Enterprise Rent-A-Car, constructed a multi-

factor test.[3]  In re Enterprise, 683 F.3d at 468.  The four enumerated factors include: (1) the alleged employer's authority to hire and fire the relevant employees; (2) the alleged employer's authority to promulgate work rules and assignments and to set the employees' conditions of employment: compensation, benefits, and work schedules, including the rate and method of payment; (3) the alleged employer's involvement in day-to-day employee supervision, including employee discipline; and (4) the alleged employer's actual control of employee records, such as payroll, insurance, or taxes.  Id. at 469.  The court cautioned that "these factors *do not constitute an exhaustive list* of all potentially relevant facts, and should not be blindly applied."  Id. (emphasis in original).  That is, the Enterprise factors are not necessarily the "sole considerations" that enter into a determination of joint employer status.  Id. at 469–70.

      Like the FLSA, the PMWA has a similarly expansive definition of the word "employer."  It states that an "employer" "includes any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employee." 43 P.S. § 333.103(g).  Thus, similar to the FLSA, "Pennsylvania law does not shield corporate officers from individual liability for personal tortious conduct."  Scholly v. JMK Plastering, Inc., No. Civ.A.07-4998, 2008 WL 2579729, at *4 (E.D. Pa. June 25, 2008).  "It would be incongruous to construe this practically identical language [of the PMWA] to having a meaning different from that of FLSA."  Id.  Accordingly,

---

    [3] Although the court in that case faced the question whether a parent company was a joint employer of the assistant managers employed by certain of the parent company's subsidiaries, the test's applicability was not limited to that specific factual scenario; rather, as the court explained, the factors upon which it modeled the Enterprise test "provide a useful analytical framework and may generally serve as the starting point for a district court's analysis, as they did here, especially in the parent-subsidiary context."  In re Enterprise, 683 F.3d at 469.

the analysis for whether an individual constitutes an "employer" is the same under the PMWA as under the FLSA.  <u>Burroughs v. MGC Servs., Inc.</u>, No. Civ.A.08-1671, 2009 WL 959961, at *4 (W.D. Pa. Apr. 7, 2009) (citing cases).

In the present case, the Complaint includes allegations that, while sparse, allege that Defendant Kaback may be an "employer" within the meaning of the FLSA.  The Complaint asserts that Kaback "is the President and Chief Executive Officer of Defendant IT Factor Productions and maintains operational control over all of IT Factor's daily operations and business activities."  (Compl. ¶ 5.)  Moreover, it avers that, "[a]s a corporate officer with operational control of Defendant IT Factor, who is responsible for the day-to-day operations, including direct responsibility for the supervision of employees, Defendant Kaback is jointly and severally liable under the FLSA."  (<u>Id.</u> ¶ 39.)  Defendant Kaback's current Motion to Dismiss does not attempt to deny such allegations—particularly at this Rule 12(b)(6) stage of proceedings—but simply relies on the limited liability status of her company.  Such limited liability status, however, does not insulate her from liability under the FLSA or PMWA if she indeed exercised operational control of the company and was individually responsible for the FLSA and PMWA violations.  As that inquiry is a factual one best reserved for a later stage of litigation, the Court denies the Motion to Dismiss as to those claims.

     **B.**     <u>**WPCL Claims**</u>

Defendant Kaback also seeks dismissal of the claim against her under the Pennsylvania Wage Payment and Collection Law ("WPCL"), 43 Pa.C.S. § 260.1, <u>et seq.</u>  The WPCL requires employers to pay a separated employee his or her "wages or compensation earned" at the time of separation no later than the employer's next regular payday.  43 Pa. Cons. Stat. § 260.5.  The

WPCL notes that wages are "all earnings of an employee" regardless of how they are determined. Id. § 260.2a.  Wages also include fringe benefits provided by an employer.  Id.

Under the WPCL, "employer" is defined as "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth."  Id.  The Third Circuit has held that this language imposes personal liability on high-ranking corporate officers for employees' unpaid wages.  Carpenters Health and Welfare v. Ambrose Inc., 727 F.2d 279, 283 (3d Cir. 1983), disapproved of on other grounds by McMahon v. McDowell, 794 F.2d 100 (3d Cir. 1986); see also Walsh v. Alarm Sec. Grp., Inc. 95 F. App'x 399, 402 (3d Cir. 2004) (finding that the language of the WPCL imposes personal liability on high-ranking corporate officers for employees' unpaid wages).  "To hold an 'agent or officer' personally liable for unpaid wages, 'evidence of an active role in decision making is required.'"  Int'l Ass'n of Theatrical Stage Emps., Local Union No. 3 v. Mid–Atl. Promotions, Inc., 856 A.2d 102, 105 (Pa. Super. Ct. 2004) (citing Mohney v. McClure, 568 A.2d 682 (Pa. Super. Ct. 1990), aff'd, 604 A.2d 1021 (Pa. 1992)). The Pennsylvania Superior Court has explained that "[t]o sustain its case against [an individual] as an 'employer' under the WPCL, [a plaintiff] ha[s] to show [the individual] was actively involved in corporate policy-making, such as corporate decision-making or corporate advisement on matters of pay or compensation."  Int'l Ass'n of Theatrical Stage Emps., 856 A.2d at 106.

As set forth above, Defendant Kaback, as President and CEO of Defendant IT Factor Productions, appears to be one of the highest ranking officers in the company.  (Compl. ¶ 5.) Taking the allegations of the Complaint in the light most favorable to Plaintiff, she was also

actively involved in decision-making with the company. (Id. ¶ 39.) Given such allegations, Kaback could meet the standard for imposing personal liability on her as an "employer" under WPCL, regardless of the protections provided by state limited liability statutes. At the very least, the level of her corporate responsibility and management raises an issue of fact not appropriate for resolution in a Rule 12(b)(6) motion.

IV.     CONCLUSION

In light of the foregoing, the Court finds that the allegations of the Complaint are sufficient to state a claim for liability under the FLSA, PMWA, and WPCL against Defendant Kaback. As such, her Motion to Dismiss shall be denied.